[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14525
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-14223-JEM

SALLY A. PERRY,

Plaintiff -Appellant,

versus

THE CITY OF AVON PARK, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 18, 2016)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Sally Perry appeals the district court's grant of summary judgment in favor of the City of Avon Park on her claims under Title VII, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act, 29 U.S.C. § 633a, the Americans with Disabilities Act, 42 U.S.C. §§ 12112–12114, and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq*. She asserts that the district court erred in granting summary judgment on her ADA and FCRA claims because there was a genuine issue of material fact as to her qualifications. She also argues that the grant of summary judgment on her Title VII and ADEA claims was improper because she presented evidence of her supervisor's alleged dislike of women and older workers. Following review of the record and the parties' briefs, we affirm.

## I

Ms. Perry began working for the City of Avon Park in 1999 as a meter reader for the water department. In 2009, she was reassigned to an inventory control position. In September of that year, the City hired Julian Deleon as the Public Works Director. At the time of Mr. Deleon's hiring, the City was in debt $7.5 million and borrowing from its infrastructure funds to stay operational.

Mr. Deleon instituted significant changes. He cut several positions and combined others, revising a significant number of job descriptions for City employees. For example, he reduced trash pickup to one day per week and assigned the sanitation workers other tasks, such as landscaping on the days they

were not collecting trash. As pertinent here, Mr. Deleon significantly altered Ms. Perry's position. Her job now consisted of outdoor activities like cleaning and painting fire hydrants and the water maintenance facilities, as well as maintaining hedges and shrubbery and pulling weeds. Mr. Deleon's restructuring efforts resulted in 50 of 103 City employees having their positions terminated.

Mr. Deleon was named City Manager in April of 2011. A short time prior to Mr. Deleon's promotion, in January of 2011, Ms. Perry was diagnosed with breast cancer. Ms. Perry took time off to treat her illness. After successful treatment, she returned to work, but had to continue taking medication.

In April of 2012, Mr. Deleon revised Ms. Perry's job description and title to reflect the outdoor work she had done the past three years. Her new title was maintenance technician/assistant, and the updated job description stated that the position consisted primarily of outdoor field work and limited indoor office duties. Her tasks in this position were to perform field job functions associated with the preventative maintenance of facilities in hot or cold weather.

In July of 2012, Ms. Perry sought temporary medical leave for mental health reasons. She returned with a doctor's note stating that she was not to work more than four hours per day outside, and that she could not work in hot or cold temperatures. When the City asked for clarification, the doctor responded that Ms. Perry was to avoid direct sunlight, and was to work no more than four hours

3

outside in temperatures that were above 50 degrees but below 80 degrees. Ms. Perry was given a thermometer and instructions to return to City Hall once the temperature exceeded her threshold.

Because the City is located in South Florida, the temperature thresholds were exceeded almost immediately. The City then inquired if there was any other way that Ms. Perry could be accommodated to perform her previous tasks. Ms. Perry's doctor's stated that there was no way for Ms. Perry to perform her previous work unless the temperature conditions were met. Mr. Deleon considered Ms. Perry's duties and the restrictions set by her doctor, deemed that Ms. Perry was no longer qualified to perform her previous work, and administratively terminated her position.

## II

We review a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court and drawing all factual inferences in the light most favorable to the nonmoving party. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation

4

omitted). In order to overcome a motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence supporting its position, and instead must make a sufficient showing that a jury could reasonably find for that party. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## III

Ms. Perry first argues that the district court erred in entering summary judgment in the City's favor on her ADA and FCRA claims. We review ADA and FCRA disability-discrimination claims under the same framework, so we consider both claims together. *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n. 2 (11th Cir. 2005).

Ms. Perry asserts that there was a genuine issue of material fact as to whether she was qualified for the position she was terminated from. The record does not support this claim.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability on the basis of disability in regard to . . . discharge" and any of the "terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(a). Disability-discrimination claims brought under the ADA and based on circumstantial evidence are generally examined under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973). The plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) is qualified to perform the job at issue with or without reasonable accommodation; (3) has suffered some adverse employment action; and (4) was treated differently from someone outside of her protected class. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). If the defendant provides a legitimate, non-discriminatory reason for its action, the plaintiff must then show that the reason provided by the defendant was pretextual. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).

The dispute here turns on whether Ms. Perry was qualified to perform her job. Under the ADA, a qualified individual is a person with a disability who can, with or without reasonable accommodation, perform the essential functions of the employment position that the individual holds or desires. *See D'Angelo*, 422 F.3d at 1229. An individual who cannot perform the essential job functions, even with accommodation, is not qualified and therefore not covered under the ADA. *See id.* Whether a particular job duty constitutes an essential function is a case-by-case factual inquiry. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007). We look to the employer's judgment as to what functions of a job are essential, including the written description of the position. *Id.* at 1257. We give the employer's view substantial, but not controlling, weight. *Id.* at 1258. We also

6

consult the ADA's implementing regulations as a guide for what functions are central to the performance of a job. *See* 29 C.F.R. § 1630.2(n) (describing factors to consider in determining whether a job function is essential, including, the employer's judgment, the written job description, the amount of time spent on the job performing the function, and the work experience of past incumbents in the job or current incumbents in similar jobs).

The record demonstrates that Ms. Perry was not qualified for her position. The written description for Ms. Perry's job description stated as follows:

1) Inspects and restores City facilities by performing preventative maintenance.
2) Maintains, enters data, orders materials relating to inventory.
3) Helps with non-complex office duties such as data entry and answering phones, taking messages[.]
4) Helps coordinate field work as assigned by supervisor[.]
5) Performs routine inspection and preventive maintenance on assigned equipment or city facilities and takes action to correct.
6) Cleans and paints equipment.
7) Operates light and medium-sized equipment, including the water truck.
8) Performs all duties in conformance to appropriate safety and security standards.

The description also stated that Ms. Perry would perform additional work as needed. *See* D.E. 65-2 at 8–9. This description was issued to Ms. Perry in April of 2012 and in October of 2012 at the request of her doctor. The duties listed are consistent with the outside work she had been performing when her job changed in

2009. Only two of her eight duties involved indoor office work, indicating that the majority of Ms. Perry's work was performed outdoors.

Ms. Perry's own deposition testimony demonstrates that her primary duties as an employee took place outside doing manual labor. Ms. Perry testified that as of March of 2012, she was assigned to work outside for more than two days in a week. *See* D.E. 56-2 at 65. *See also id.* at 41 ("I had assignments for each day, and they were all working outside."). Mr. Deleon similarly stated in his sworn affidavit that from October of 2009 forward, Ms. Perry's position "primarily entailed outside duties, with limited inside office duties or inventory control functions." D.E. 57 at 8. Any discrepancies concerning how much time Ms. Perry spent outside during a given period are immaterial—both parties testified that since Mr. Deleon was hired, Ms. Perry had spent most of her time performing physical labor outside. Although Ms. Perry also helped out in the office on an "as needed" basis, *see* D.E. 56-2 at 277, and on some weeks she spent half of her time indoors, *see id.* at 64, that limited work did not negate the fact that the core of her duties consisted primarily of outside work. The ability to perform outdoor work was therefore an essential function of Ms. Perry's position. *See Holly*, 492 F.3d at 1258–59.

Ms. Perry put forward two accommodations that she says would have allowed her to perform her essential job functions. The first proposed accommodation was to disregard her previous duties, and to assign her primarily

8

office tasks. This proposal, however, would have resulted in changing her job description and eliminating one of her essential job functions, which the City was not required to do. *See D'Angelo*, 422 F.3d at 1229–30. The second accommodation was to follow her doctor's restrictions—working a maximum of four hours per day in temperatures that did not go below 50 degrees or above 80 degrees. As noted, however, the City is located in South Florida, where temperatures often exceed 80 degrees year round. The City attempted to accommodate these restrictions, but after three consecutive days of Ms. Perry being unable to work, it determined that Ms. Perry would be unable to handle her duties for any extended amount of time in the heat of the Florida sun. In short, the accommodations recommended by Ms. Perry's doctor proved to be unmanageable. If those medical instructions were followed, Ms. Perry would not be able to perform the essential functions of her job on a consistent basis. *See D'Angelo*, 422 F.3d at 1229 ("If the individual 'is unable to perform an essential function of [her] . . . job, even with an accommodation, [she] is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. In other words, the ADA does not require [the employer] to eliminate an essential function of [the plaintiff's] job.'") (citation omitted).

We conclude that Ms. Perry was not qualified to perform the essential functions of her job, even taking into account the proposed accommodations, and

9

therefore she did not make out a prima facie case of discrimination. Accordingly, we affirm the district court's entry of summary judgment on the ADA and FCRA claims.

## IV

With respect to her Title VII and ADEA claims, Ms. Perry asserts that summary judgment was improper because there was evidence that Mr. Deleon discriminated against her because of her gender and because of her age. We disagree.

Title VII provides that it is unlawful for an employer "to . . . discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, under the ADEA it is unlawful for an employer to discharge or otherwise discriminate against any employee who is at least 40 years old on the basis of age. *See* 29 U.S.C. §§ 623(a)(1), 631(a).

Both Title VII and ADEA claims may be proven through either direct or circumstantial evidence. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997) (Title VII); *Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014) (ADEA). Where, as here, a plaintiff proffers circumstantial evidence, we are again guided by the burden-shifting *McDonnell Douglas* framework, which requires that the plaintiff first make a prima facie case in order to trigger the defendant's burden of articulating a legitimate, nondiscriminatory

10

reason for the adverse employment action. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642–43 (11th Cir. 1998) (Title VII); *Mazzeo*, 746 F.3d at 1270 (ADEA). If the employer satisfies this burden, then the employee must provide sufficient evidence that the proffered reason is merely a pretext for unlawful discrimination. *See id.*

In order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was "replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003). Similarly, a plaintiff may establish a *prima facie* case under the ADEA by showing that (1) she was a member of the protected group of persons between the ages of forty and seventy; (2) she was subject to adverse employment action; (3) a substantially younger person filled the position from which she was discharged; and (4) she was qualified to do that job. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Age discrimination claims also require that the plaintiff ultimately show that age was the "but-for" cause of the adverse employment decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

11

The record evidence demonstrates that Mr. Perry was no longer able to perform the objective duties of her position as a result of her medical condition. Ms. Perry, however, was a "longtime employee" of the City and held her current position for over a year before her discharge. Generally, "if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1299 (11th Cir. 2015). Even assuming Ms. Perry established a *prima facie* case of age and gender discrimination, however, she has failed to sufficiently demonstrate that the City's legitimate, non-discriminatory reason for her termination—that Ms. Perry's medical condition prevented her from fulfilling the essential functions of her position—was pretextual.

Ms. Perry first argues that Mr. Deleon's alleged statement to City employee Richard Conklin that women do not belong in the workplace is direct evidence of Mr. Deleon's negative attitude toward women. *See* D.E. 65-4 ("I was in Mr. Julian Deleon's office talking to him, while he was contemplating on where to place a female employee. He proceeded to tell me that 'a woman's place is in the home taking care of children and not being in the work place.'").

Direct evidence is evidence that, "if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989). "[O]nly the most blatant remarks, whose intent could be

12

nothing other than to discriminate . . . will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotation marks and citation omitted). We have generally held that "remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990)). *See also Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 854–55 (11th Cir. 2010) (comment—"You're fired, too. You're too religious"—uttered by supervisor while terminating employees constituted direct evidence of religious discrimination); *Caban-Wheeler v. Elsea*, 71 F.3d 837, 843 (11th Cir. 1996) (statement by black decisionmaker to white employee that he wanted a black person to have the white employee's job constituted direct evidence that the employee was terminated for racially discriminatory reasons); *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930–31 (11th Cir. 1995) (comments to female employee that "women were simply not tough enough to do the job" from which employee had been removed and that it would "require a man to do [that] job" was direct evidence of gender discrimination).

Mr. Deleon's alleged comment that women do not belong in the workplace was not made in relation to Ms. Perry's termination—indeed, it was made in 2009, three years prior to his decision to fire Ms. Perry. Although this comment may

13

have reflected a gender bias generally, the finder of fact would be required to draw further inference that Mr. Deleon's sentiments expressed while determining the placement of a female employee motivated his later decision to terminate Ms. Perry. *See Damon*, 196 F.3d at 1359 (comment by supervisor immediately after employee's termination that the company "needed . . . aggressive *young* men . . . to be promoted" required inference that interest in promoting young men motivated decision to terminate employee) (emphasis in original); *Burrell v. Bd. of Trustees of Georgia Military Coll.*, 125 F.3d 1390, 1393 n. 7 (11th Cir. 1997) (decisionmaker's comment regarding his unwillingness to *promote* a female to the second-highest office in management was not direct evidence because a factfinder would have to draw inferences that decisionmaker also intended to later *terminate* female employees because they were female).

Given this precedent, Mr. Deleon's alleged statement does not constitute direct evidence of discrimination. Nor does Mr. Deleon's remark, by itself, constitute sufficient circumstantial evidence to establish that the proffered reason for termination was mere pretext for discrimination, particularly in light of the fact that this statement was made three years prior to Ms. Perry's termination in 2012.

In support of her ADEA claim, Ms. Perry cites to the City's assertion that all City employees laid off during Mr. Deleon's restructuring within the Public Works Department were male and most were younger than Ms. Perry. She argues that of

14

those six terminated employees specifically identified by the City, only one was under the age of 40.

It is undisputed, however, that during Mr. Deleon's tenure, he reduced the City's workforce from approximately 103 employees to less than 50 in 2013. Ms. Perry's implied pattern of age discrimination—based solely upon the City's own citation to its termination of five employees over the age of forty—without more, is insufficient to establish pretext. *Cf. Damon*, 196 F.3d at 1361 (termination within a one-year period of four older, highly experienced store managers out of a total of seven managers, with each replaced by an employee under forty years old, constituted probative circumstantial evidence of age discrimination, which was further underscored by direct testimony).

Ms. Perry has failed to provide sufficient evidence that the City's proffered reason for her termination is merely pretext for gender or age discrimination. Accordingly, we affirm the district court's grant of summary judgment.

## V

For the foregoing reasons we affirm the district court's grant of summary judgment.

**AFFIRMED.**

15