[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10250
_____

D.C. Docket No. 3:10-cv-01108-RBD-JRK

ANTHONY MAZZEO,

Plaintiff-Appellant,

versus

COLOR RESOLUTIONS INT'L, LLC,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 31, 2014)

Before JORDAN and KRAVITCH, Circuit Judges, and ALBRITTON,[*] District Judge.

JORDAN, Circuit Judge:

_____

[*] Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

Anthony Mazzeo sued his former employer, Color Resolutions International, LLC, claiming discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and the Florida Civil Rights Act, Fla. Stat. § 760.10 (the "FCRA"). The district court granted summary judgment in favor of CRI. With respect to the disability claims, the district court concluded that Mr. Mazzeo did not present a *prima facie* case because he failed to show that he either suffered from a disability or was regarded by CRI as having a disability. As to the age discrimination claims, the district court ruled that Mr. Mazzeo failed to state a *prima facie* case pursuant to a reduction-in-force theory.

Mr. Mazzeo's appeal requires us to address the application of certain recent amendments to the ADA. For the reasons which follow, we conclude that, in light of these amendments, Mr. Mazzeo submitted sufficient evidence on his ADA and FCRA disability claims to make out a *prima facie* case. We also conclude that the district court erroneously applied the *prima facie* standard created for reduction-in-force cases to Mr. Mazzeo's age discrimination claims. We therefore vacate the summary judgment entered in favor of CRI and remand for further proceedings.

# I

We review a district court's grant of summary judgment *de novo,* viewing the record and drawing all factual inferences in a light most favorable to Mr.

Mazzeo. *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005).  CRI, as the party moving for summary judgment, had the burden of demonstrating that there were no genuine issues as to any material fact, and that it was entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Disability and age-related discrimination actions under the FCRA are analyzed under the same frameworks as the ADA and ADEA, respectively.  *See Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) (ADA); *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (ADEA).  As a result, our discussion of the ADA and ADEA governs the FCRA claims.

## II

Starting in 2004, CRI employed Mr. Mazzeo to provide technical and sales service to its customers in Florida and southern Georgia. Mr. Mazzeo's employment claims revolve around his termination by CRI in early 2009.

In 2007, Mr. Mazzeo was diagnosed with a herniated disc and torn ligaments in his back.  The herniated disc caused pain along Mr. Mazzeo's lower back, which spread down his right leg and intermittently affected his ability to walk, sit, stand, bend, run, and lift objects weighing greater than ten pounds.  In October of 2008, Mr. Mazzeo first discussed his condition with his supervisor at CRI, Hixon Boyd, and with the supervisor of human resources at CRI, Phyllis Arellano.  Between

3

January and March of 2009, Mr. Mazzeo had at least three discussions with Mr. Boyd regarding his possible back surgery, which would require him to miss two weeks of work and have three to six months of restricted activity. Mr. Boyd is alleged to have remarked, whether in concern for Mr. Mazzeo's well-being or out of a self-serving business interest, that such a surgical procedure would likely require a longer recovery period of six to eight weeks.

On February 25, 2009, Mr. Mazzeo informed Mr. Boyd that his back surgery had been scheduled for the second week of March. The very next day, Mr. Boyd initiated the paperwork for Mr. Mazzeo's termination. According to CRI, the reason for the termination was the declining sales revenue, over a period of several years, in Mr. Mazzeo's Florida territory. Mr. Boyd handed the termination papers to Mr. Mazzeo two days before his scheduled surgery. When CRI terminated him on March 10, 2009, Mr. Mazzeo was 46.

Ten days after Mr. Mazzeo's termination, CRI offered a similar sales position to a 23-year-old recent college graduate, Jeremy Kyzer, who began working for CRI on March 23, 2009. CRI asserted that Mr. Kyzer—who had no sales experience—was hired solely to replace a different, retiring CRI employee, Vivian Lumpkin, who covered a different territory than Mr. Mazzeo. Mr. Boyd's deposition testimony, however, suggests that, at the time it hired Mr. Kyzer, CRI

4

intended (or at least envisioned) that he would service the areas formerly serviced by both Mr. Mazzeo and Ms. Lumpkin.

Mr. Mazzeo maintains that, prior to his termination, he had requested this same opportunity, i.e., to merge his service area with the territory assigned to the retiring Ms. Lumpkin. According to Mr. Mazzeo, Mr. Boyd rejected this request and explained that the new business opportunities arising from his Florida territory would require Mr. Mazzeo's full attention. Yet, at around this same time in early 2009, CRI had already decided to terminate Mr. Mazzeo.

## III

We start with the disability claim under the ADA. In part as a reaction to Supreme Court decisions in cases like *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) (whether an individual is disabled must be determined with reference to corrective measures), and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196-97 (2002) (interpreting the phrase "substantially limits" to mean limiting to a considerable or large degree, and the phrase "major life activities" to mean activities that are of central importance to daily life), Congress made significant changes to the ADA by enacting the ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, which became effective on January 1, 2009. Because the critical events in this case—Mr. Mazzeo's continued back problems, scheduled surgery, and termination—took place after the ADAAA

5

went into effect, we apply the post-ADAAA version of the ADA. *See, e.g.*, *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 n.5 (2d Cir. 2012) ("The ADAAA became effective on January 1, 2009, and applies to claims, such as McElwee's, which arose after that date.").[1]

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of a disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

When it enacted the ADAAA, Congress indicated that one of its purposes was to "convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. §

---

[1] All references to the ADA in this opinion, therefore, are to the Act as amended by the ADAAA.

12101 note.[2]  The ADA defines the term "disability" as (1) a physical or mental impairment that "substantially limits one or more" of an individual's "major life activities," (2) a "record of such an impairment," or (3) "being regarded as having such an impairment" as described in subsection (1).  42 U.S.C. § 12102(1).  Under the ADA, "major life activities include, but are not limited to, . . . sleeping, walking, standing, lifting, . . . [and] bending[.]" *Id.* at § 12102(2)(A).

Dr. Christopher Roberts, Mr. Mazzeo's treating physician, submitted an affidavit stating that degenerative disc disease and a herniated disc impacted Mr. Mazzeo's ability to walk, bend, sleep, and lift more than ten pounds, and that Mr. Mazzeo's pain would increase with prolonged sitting and standing.  The district court thought this affidavit was insufficient, conclusory, and did not demonstrate that Mr. Mazzeo was disabled because it "contain[ed] no detailed discussion as to whether [the] back condition affected any of [Mr. Mazzeo's] life activities."  D.E. 33 at 9.  The district court cited to a pre-ADAAA Eleventh Circuit opinion for the proposition that there could be "no disability based on physician's lifting restrictions where the plaintiff testified she could still work."  *Id.*  (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1228 (11th Cir. 1999)).  The district court also noted that the post-surgery work restrictions Mr. Mazzeo discussed with

---

[2]    Congress intended "that the establishment of coverage under the ADA should not be overly complex nor difficult, and expect[ed] that the [ADAAA] will lessen the standard of establishing whether an individual has a disability for purposes of coverage under the ADA." H.R. Rep. No. 110-730, at 9 (2008).

Mr. Boyd were no more than a transitory impairment and, therefore, insufficient to establish that CRI regarded Mr. Mazzeo as disabled. For several reasons, we disagree with the district court's analysis as to the matter of disability.

First, although the district court relied on one of our pre-ADAAA cases, *Hilburn*, 181 F.3d at 1228, to support its conclusion that Dr. Roberts' affidavit was conclusory, that case is distinguishable. In *Hilburn*, the physician opined, without articulating any specific facts, that the plaintiff was "substantially limited in performing manual tasks." *Id.* Given that the plaintiff herself testified that she could walk, run, sit, stand, sleep, eat, bathe, dress, write, work around the house, cook, and work, we held that the physician's opinion was conclusory and did not create any issue of material fact. *See id.* at 1227-28. Here, by contrast, Dr. Roberts explained that he had been treating Mr. Mazzeo for an extended period of time, that one of Mr. Mazzeo's disc herniation problems was "nerve root involvement caus[ing] radicular symptoms, that is pain radiating from the lumbar spine down Mr. Mazzeo's right leg," and that the limitations he noted (i.e., the impact on Mr. Mazzeo's ability to walk, bend, sleep, and lift more than ten pounds) were "substantial . . . and permanent." That diagnosis was not, in our view, conclusory, as it explained Mr. Mazzeo's medical condition, what specific pain the condition caused, and the limitations on "major life activities" (as that term is broadly defined by the ADA) resulting from the condition and pain. At the

8

summary judgment stage, there was no need for a more "detailed discussion" of the effects of Mr. Mazzeo's back condition.[3]

Second, although Mr. Mazzeo testified at his deposition that his back problems only affected his ability to play golf and have sex, the district court read that testimony too broadly. The questions that were posed to Mr. Mazzeo did not contain a specific time frame, making it unclear whether his answers referred to how he felt before his operation in March of 2009, or after his operation (which took place two days after his termination). Indeed, some of the questions were specifically about Mr. Mazzeo's post-operation/post-termination status. *See, e.g.*, Mazzeo Dep. at 157 ("Q: And from the time you had your surgery to date does your back pain affect your performance activities other than golf or sex? A: No."). We therefore do not think that Mr. Mazzeo's deposition testimony warranted summary judgment in favor of CRI.

Third, in passing the ADAAA, Congress stated that the Supreme Court's interpretation of the phrase "substantially limits," in cases like *Toyota Motor*, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA," and that "the primary object of attention in cases brought under the ADA should be whether entities covered by the ADA have complied with their

---

[3]    There is no deposition of Dr. Roberts in the record, so it appears he was not deposed. CRI, moreover, did not submit any medical testimony about Mr. Mazzeo's back condition or its effects.

obligations[.]"  42 U.S.C. § 12101 note.  The ADA, therefore, now provides that the phrase "substantially limits" "shall be interpreted consistently with the findings and purposes of the [ADAAA]," *id.* at § 12102(4)(B), and that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," *id.* at § 12102(4)(D).   And the EEOC, pursuant to its statutory authority to issue regulations implementing the definition of "disability" in the ADA, *see id.* at § 12205a, has further explained that the phrase "substantially limits" is to be "construed broadly in terms of extensive coverage" and is "not meant to be a demanding standard."   29 C.F.R. § 1630.2(j)(1)(i).  The EEOC's regulations also provide that an "impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting;" the phrase "substantially limits" "shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA;" (with the exception of glasses or contact lenses) the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures;" and an "impairment that is episodic or in remission is a disability if it would substantially limit a major life activity." *Id.* at § 1630.2(j)(1)(ii), (iv), (vi)-(vii).

As noted earlier, the ADA now states that "major life activities include, but are not limited to, . . . sleeping, walking, standing, lifting, . . . [and] bending[,]" 42 U.S.C. § 12102(2)(A), and Dr. Roberts stated in his affidavit that Mr. Mazzeo's disc herniation problems and resulting pain—which had existed for years and were serious enough to require surgery—substantially and permanently limited Mr. Mazzeo's ability to walk, bend, sleep, and lift more than ten pounds.   Given the new standards and definitions put in place by the ADAAA, that evidence was enough for Mr. Mazzeo to present a *prima facie* case on his ADA and FCRA disability claims.[4]

## IV

We next address Mr. Mazzeo's age discrimination claim under the ADEA. The ADEA, whose purpose is "to promote employment of older persons based on their ability rather than age," 29 U.S.C. § 621(b), prohibits certain actions by an employer, including the termination of, or deprivation of employment opportunities against, an employee who is at least 40 years old because of that employee's age.  *See id.* at §§ 623(a)(1)-(2), 631(a).

---

[4]    Because we conclude that Mr. Mazzeo presented sufficient evidence that he was suffering from a disability under the ADA, we need not and do not address his alternative argument that CRI regarded him as disabled.  We do, however, note that the district court addressed whether Mr. Mazzeo's impairment was "transitory and minor" without CRI raising that specific argument and without giving Mr. Mazzeo notice.  Because this was procedurally improper, *see Imaging Bus. Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006), Mr. Mazzeo can pursue his "regarded as" theory on remand if he wishes.

## A

A plaintiff may support a claim under the ADEA through either direct evidence or circumstantial evidence. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). To ultimately prevail, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

Where, as here, a plaintiff proffers circumstantial evidence to establish an ADEA claim, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013) (explaining how this burden-shifting framework for circumstantial evidence remains consistent with the Supreme Court's decision in *Gross*). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). If he does so, the burden of production shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Id*. If the defendant articulates at least one such reason, the plaintiff is then given the opportunity to show that the employer's stated reason is merely a pretext for discrimination. *See id*.

12

In the district court and on appeal, Mr. Mazzeo and CRI have disagreed about the appropriate *prima facie* test under the ADEA.  Mr. Mazzeo urged the district court to use the standard version of the ADEA *prima facie* case.  *See, e.g.*, *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (the elements of a *prima facie* case under the ADEA are that the plaintiff was a member of the protected group, that the plaintiff was subject to an adverse employment action, that a substantially younger person filled the position the plaintiff sought or from which he was fired, and that the plaintiff was qualified for the job in question).  CRI, for its part, argued that the district court should use the version of the *prima facie* case created for reduction-in-force ("RIF") cases.  *See, e.g.*, *Zaben*, 129 F.3d at 1457 ("in cases involving RIFs and in those where a position is eliminated entirely," the plaintiff must show that he was in the protected age group and was adversely affected by an employment decision, establish that he was qualified for the position held (or to assume another position) at the time of discharge, and present sufficient evidence from which a reasonable jury could find that the employer intended to discriminate on the basis of age through its employment decision).  *See also Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997) (same).  Both parties have reiterated their positions before us.

The "establishment of a *prima facie* case [under the ADEA] is essentially a factual question particular to the circumstances of a given case." *Carter v. City of*

13

*Miami*, 870 F.2d 578, 583 (11th Cir. 1989).  Whether the standard version or the RIF version of the ADEA *prima facie* case applies depends on Mr. Mazzeo's ability to present sufficient evidence that he was replaced by a younger individual. *See Williams v. General Motors Corp.*, 656 F.2d 120, 128 (5th Cir. 1981) ("Reduction-in-force cases are obviously outside the embrace of [our standard *prima facie* criteria] since reduction-case plaintiffs are simply laid off and thus incapable of proving . . . actual replacement by a younger employee.").[5]

The district court granted summary judgment in favor of CRI because it concluded that Mr. Mazzeo's position had been eliminated and that Mr. Mazzeo was not replaced by Mr. Kyzer.  As the district court read the record, Mr. Mazzeo was not replaced by anyone, and Mr. Kyzer was hired only to take over Ms. Lumpkin's territory.  Using the RIF version of the ADEA *prima facie* case, the district court ruled that Mr. Mazzeo had failed to satisfy the last prong of that *prima facie* case—he had failed to present sufficient evidence from which a reasonable jury could find that CRI intended to discriminate on the basis of age. *See* D.E. 33 at 11-14.

## B

A plaintiff may demonstrate that he was replaced by showing that, after his termination, some of his former responsibilities were delegated to another

---

[5]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent Fifth Circuit cases decided prior to October 1, 1981.

14

employee, in addition to that other employee's own responsibilities. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).  In our view, the district court erred in applying the RIF version of the *prima facie* case to Mr. Mazzeo's claim of age-based discrimination at the summary judgment stage.

The evidence here, viewed in the light most favorable to Mr. Mazzeo, indicates that his position was not eliminated.  Shortly after his termination, the responsibilities and sales territory of Mr. Mazzeo were combined together with those of a retiring employee, Ms. Lumpkin. The duties of this consolidated position were no different from those of Mr. Mazzeo's original position, except inasmuch as the consolidated position necessarily encompassed a larger sales territory forged from the two constituent positions.  CRI, moreover, hired Mr. Kyzer—a younger individual without any sales experience—shortly after Mr. Mazzeo's termination to assume this consolidated position.  A reasonable jury, we think, could find that CRI, in giving Mr. Kyzer this consolidated position, replaced Mr. Mazzeo.[6]

CRI contends that Mr. Kyzer was hired to replace Ms. Lumpkin, not Mr. Mazzeo.  That is a permissible reading of the record, but it is not the only reasonable reading of the record when the evidence is viewed in the light most

---

[6]    "Question:   So at the time Mr. Kyzer was hired, was it the plan that he would take over Ms. Lumpkin's territory and then eventually take over Florida as well?

Answer:    We had talked about that certainly, yes."

Boyd Dep. at 71.

15

favorable to Mr. Mazzeo. Although, as the district court noted, Mr. Kyzer was hired to work out of Atlanta, he never handled the key CRI client in Atlanta who required a local representative. Moreover, Mr. Boyd's deposition testimony suggests that, at the time Mr. Kyzer was hired, CRI informed him that he would be servicing the territory of Ms. Lumpkin as well as the territory formerly serviced by Mr. Mazzeo. Indeed, within his first month of employment at CRI, Mr. Kyzer was accompanying Mr. Boyd to client meetings in Florida, Mr. Mazzeo's former territory, and after that he was traveling to Florida every other week. And following his training period in the summer of 2009, Mr. Kyzer officially assumed responsibility over Mr. Mazzeo's territory, as well as that of Ms. Lumpkin's.

In *Rollins*, an ADEA case, the plaintiff and the employer disputed—as Mr. Mazzeo and CRI do here—whether the plaintiff had been replaced by another employee. To support its argument that there had not been a replacement, the employer cited to evidence (1) that some of the plaintiff's responsibilities had been completely eliminated, (2) that the other employee performed "an entirely different function" in the company, and (3) that the other employee only took over some of the plaintiff's responsibilities. *See* 833 F.2d at 1529. The plaintiff, for her part, argued that she had been replaced, and cited to evidence (1) that she had to train the other employee, (2) that the other employee took over some of her duties, and (3) that other employees completed her remaining, existing duties. *See id.*

16

Although completing some of the plaintiff's duties took up "very little" of the other employee's time, we concluded that the plaintiff had produced enough evidence to defeat the employer's motion for summary judgment: "We believe that Rollins [the plaintiff] has set forth enough facts to raise an issue based on this argument. . . . Rollins has articulated specific facts from which one could infer that Richardson [the other employee] actually replaced her.  Consequently, we find that [Rollins] has met her burden of presenting a *prima facie* case." *Id.*

Rollins, in our view, precludes the use of the RIF version of the ADEA *prima facie* case at the summary judgment stage in this case.  Mr. Mazzeo presented evidence which, viewed in the light most favorable to him, suggests that Mr. Kyzer replaced him shortly after his termination.  On remand, the district court will need to use the standard version of the ADEA *prima facie* case in evaluating CRI's motion for summary judgment.  We express no view on the merits of CRI's motion under the standard version of the *prima facie* case.

## V

The district court's grant of summary judgment on Mr. Mazzeo's disability and age discrimination claims under the ADA, the ADEA, and the FCRA is vacated, and the case is remanded for proceedings consistent with this opinion.

**VACATED AND REMANDED.**

17