NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1627
_____

CLIVE BARON,
                                    Appellant

v.

ABBOTT LABORATORIES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-4706)
District Judge:  Hon. Jan E. DuBois
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 9, 2016

Before:   JORDAN, GREENAWAY, JR., and RENDELL, *Circuit Judges*.

(Filed November 29, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Appellant Clive Baron asks us to reverse an order of the United States District

Court for the Eastern District of Pennsylvania granting Abbott Laboratories' motion for

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

summary judgment. The District Court held that Baron had failed to establish a prima facie case of discrimination under the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and the Florida Civil Rights Act of 1992 ("FCRA"). We will affirm.

## I.      Background[1]

From 2007 to 2013, Clive Baron worked for STARLIMS, a company that provides a web-based platform to manage various types of laboratory information. At first, Baron served as STARLIMS's Chief Business Development Officer. Then, in 2010, STARLIMS was acquired by Abbott Laboratories, and Baron was promoted to the position of General Manager of the Europe/Africa region.[2]

In 2012, he was subsequently promoted to the position of Manager of Global Commercial Operations, which effectively made him General Manager of STARLIMS.[3] His job was to oversee the management and operation of each of STARLIMS's four geographic regions. That promotion coincided with the promotion of another Abbott employee, Scott Goss. Goss was promoted from General Manager of North America (for STARLIMS) to General Manager of OneLab, another business within Abbott. After their respective advancements, Baron and Goss reported to the same boss and were at the same

---

[1] When evaluating summary judgment, we view the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 336 (3d Cir. 2002).

[2] At the time, STARLIMS operated in four regions, designated as North America, Europe/Africa, Asia Pacific, and Latin America.

[3] The parties disagree on Baron's exact title, but for the sake of simplicity we refer to his position as General Manager. *See* A5.

level on the organizational chart. Notably, both Baron's and Goss's previous positions (region-level general manager positions) were left vacant following their promotions. In addition to his duties as General Manager of STARLIMS, Baron took on the responsibilities of the vacant region-level general manager positions.

In the summer of 2013, Abbott eliminated the position of General Manager of OneLab, resulting in Goss's termination. He was 42 years old at the time. About six months later, in December of 2013, Abbott eliminated the position of General Manager of STARLIMS, resulting in Baron's termination. Baron was then 60. According to Abbott, the restructuring that caused Goss and Baron to lose their jobs reflected a desire "to shake things up" (A238 ¶ 19), to increase "visibility into the workings in the field" (A31 ¶ 42), and "to take a layer out of the organization, so that the organization could make decisions and act on them more quickly" (*id*. ¶ 41). Abbott further suggested that it restructured partially due to "the underperformance of [Abbott Informatics Solutions ("AIS")]."[4] (A31 ¶ 45.)

Shortly after Baron's termination, STARLIMS promoted two country-level managers to region-level general manager positions. Simon Wood, who is six years younger than Baron, became the General Manager of Europe/Africa.[5] Tamir Gottfried, who is 21 years younger than Baron, became the General Manager of the Americas.[6]

---

[4] STARLIMS is a division of AIS.

[5] Prior to Baron's termination, he had recommended Wood for this position.

[6] After Baron's termination, the North America and Latin America regions were combined into "the Americas."

Baron was not considered for either of these positions. In February 2015, Abbott hired Richard Lanchantin. By May of that year, Lanchantin was performing a role that mirrored Baron's old position.[7] At the time, Lanchantin was 59 years old.

On May 14, 2014, Baron filed a verified charge of discrimination with the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, and the Florida Commission on Human Relations, asserting claims of age discrimination. Three months later, he filed this action, alleging violations of the ADEA, PHRA, and FCRA. After the close of discovery, Abbott filed a motion for summary judgment, arguing that Baron had failed to make out a prima facie case of age discrimination and that Baron had failed to show that Abbott's nondiscriminatory justification for terminating him was a pretext for age discrimination. The District Court concluded that either ground was sufficient to grant the motion, and it entered summary judgment. Baron appealed.

---

[7] The parties disagree about whether Lanchantin was hired into the position previously held by Baron, or whether he was hired into a different position, and switched roles in May of 2015. Regardless of whether Lanchantin started in Baron's former position, the undisputed facts show, at a minimum, that he was hired for the purpose of one day filling Baron's former position.

## II. Discussion[8]

To determine whether a plaintiff is entitled to summary judgment for claims of age discrimination under the ADEA, PHRA, or FCRA, courts apply the burden shifting paradigm described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tomasso v. Boeing Co.*, 445 F.3d 702, 705 (3d Cir. 2006) (ADEA and PHRA); *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266, 1270 (11th Cir. 2014) (FCRA). Analysis under that paradigm takes place in three steps. *McDonnell Douglas*, 411 U.S. at 802-05. First, an employee must point to facts that establish a prima facie case of discrimination. Specifically, the employee must show "(1) that he was at least forty years old, (2) that he was fired, (3) that he was qualified for the job from which he was fired, and (4) that he 'was replaced by a sufficiently younger person to create an inference of age discrimination.'" *Tomasso*, 445 F.3d at 706 n.4 (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 n.3 (3d Cir. 2002) (citation omitted)). If the plaintiff was terminated as part of a "reduction in force,"[9] he need not show that he was

---

[8] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is *de novo*. *Tomasso v. Boeing Co.*, 445 F.3d 702, 705 n.3 (3d Cir. 2006). Summary judgment is appropriate if there are no disputes of material fact and if the moving party is entitled to judgment as a matter of law. Anderson, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56. Again, in reviewing the District Court's summary judgment ruling, we view the facts in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 248-49; *Fakete*, 308 F.3d at 336.

[9] A reduction in force takes place if an employee's position is eliminated, and/or if there is a permanent cut in head count. *See, e.g.*, *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 233 (3d Cir. 1999) (employees terminated because of "budgetary constraints").

replaced by a younger person but can instead show that he was terminated while younger, similarly situated employees were retained. *See Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234-36 (3d Cir. 1999).

If the plaintiff establishes a prima facie case, the analysis moves to the second step: the burden to produce evidence shifts to the defendant-employer, who must provide "a legitimate nondiscriminatory rationale" for its decision to terminate the plaintiff. *Tomasso*, 445 F.3d at 706. This burden of production is "'relatively light'" – the employer need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (alteration in original)).

Finally, at the third step, the burden of production shifts back to the plaintiff, who must cite evidence indicating that the rationale offered by the employer is pretext for discrimination. *Id.* (citing *Fuentes*, 32 F.3d at 764).

We conclude that Baron's case fails at the first step. He has not establish a prima facie case of age discrimination. Abbott admits that "[t]he first three elements [of the prima facie case] are not in dispute." (Abbott Labs Br. at 10.) Baron was 60 years old at the time of his termination, was terminated from his position as General Manager of STARLIMS, and performed well during the course of his employment. The parties disagree, however, about whether Abbott retained similarly situated younger employees after Baron was terminated.

6

Baron argues that Abbott retained at least two younger employees – Simon Wood (six years younger than Baron) and Tamir Gottfried (21 years younger than Baron). While it is true that both Wood and Gottfried continued working for Abbott after Baron's departure, neither employee was similarly situated to Baron. While Baron was responsible for STARLIMS operations around the world, Wood and Gottfried were each responsible for operations in only one of STARLIMS's geographic regions.[10] In fact, the only employee who was similarly situated to Baron around the time of Baron's termination was Scott Goss. Goss was nearly 19 years younger than Baron and, like Baron, was terminated as part of Abbott's reorganization.

To the extent that Baron argues that he was replaced by a substantially younger employee when Abbott hired Richard Lanchantin, we disagree. While it is true that Baron was replaced by Lanchantin, it cannot fairly be said that the latter was "substantially younger" than the former. Lanchantin was 59 when he was hired, just one year younger than Baron was when terminated. In context, this is not enough of an age difference to raise an inference of age discrimination. *Cf. O'Connor v. Consol. Coin*

---

[10] As explained above, when Baron was promoted from regional general manager to General Manager of STARLIMS, there were vacancies in at least two region-level General Manager positions – the General Manager of Europe and Africa, and the General Manager of North America. In addition to his duties as General Manager of STARLIMS, Baron "perform[ed] the responsibilities of the [General Manager] Europe and [General Manager] North America positions." (A239-40 ¶ 28.) His argument that he was replaced by Wood and Gottfried is premised on Wood's and Gottfried's having been promoted to region-level general manager positions where they performed some of the duties for which Baron had been responsible. But the fact that Baron performed some region-level duties did not transform him into a regional manager, especially since he only carried region-level duties because of staffing vacancies. Wood and Gottfried were not similarly situated to Baron (either before or after his termination), and Abbott's retention of Wood and Gottfried does not support a prima facie case of discrimination.

*Caterers Corp.*, 517 U.S. 308, 312 (1996) (explaining that the purpose of establishing a prima facie case is to establish an inference of discrimination).

Because Baron has failed to establish a prima facie case of age discrimination, we need not consider whether Abbott provided a sufficient, non-pretextual business justification for its actions.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment.