[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11196
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-80811-KAM

KEITH A. THOMPSON,

Plaintiff - Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF VETERANS AFFAIRS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 6, 2020)

Before MARTIN, ROSENBAUM, and MARCUS, Circuit Judges.

PER CURIAM:

Keith Thompson, plaintiff pro se, alleged he suffered discrimination in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e et seq., by his employer, the United States Department of Veterans Affairs (the "VA").  The Secretary of the VA (the "Secretary") moved for dismissal or, in the alternative, summary judgment.  The district court granted the Secretary's motion for summary judgment and entered judgment for the Secretary.  Thompson appeals from the grant of summary judgment.  Following careful review, we affirm.

## I.

### A.

Thompson is an African American man of Bahamian descent who was approximately 51 years old at the time of the events in his complaint.  Thompson was employed by the VA for two separate periods, both of which are crucial to understanding this appeal.

Thompson was first employed by the VA as a medical support clerk.  He resigned from that position in January 2011 for medical reasons.  Less than a year later, Thompson attempted to get rehired by the VA.  During one of his interviews to get rehired, Thompson was allegedly "duplicitously recorded" without his consent.  In September 2012, Thompson filed an internal equal employment opportunity ("EEO") complaint based on that recording, and the VA ultimately entered into an agreement to rehire Thompson as a medical support assistant starting in November 2012.

2

Thompson began work as a medical support assistant on November 18, 2012.  Thompson was assigned to the "phone room," which is where he claims "people with issues, mental, physical and discipline problems are sent."  Jean Brooks, Chief of Medical Ambulatory Services, testified that she assigned Thompson to the phone room to give him a "fair shot."  The supervisors there did not know about his prior complaint and had not worked with him before, so the idea was they would not have any preconceived notions about him.  But Thompson did not like working in the phone room because all calls there are recorded.  This made him "paranoid" and reminded him of the unconsented-to recording that led to his first EEO complaint.  Thompson complained to Brooks about his placement in the phone room and she explained why she had put him there.

As the district court set forth, there were several incidents between Thompson's date of rehire and the end of 2015 that he perceived to be unfair and hostile:

(1)    In December 2012, one of Thompson's supervisors, Catherine Bendig, told him that another VA employee felt that Thompson had not paid enough attention during a training class.  Thompson said this claim was "ridiculous" and that it was "reprisal."  Thompson and Brooks ultimately met to discuss this issue, and Brooks told him that Bendig was just trying to give Thompson feedback without intending to be offensive.

(2)    Also in December 2012, another one of Thompson's supervisors, Lorraine Giglio, yelled at him in front of other employees for failing to sign out of the computer phone system.  Thompson complained to Bendig about this and she convened a meeting between her,

3

Thompson, and Giglio.  Giglio apologized to Thompson and said she had not realized she had spoken loudly.

(3)    In January 2013, Thompson objected to being assigned to sit in the trainee seat, which was directly behind Giglio.  He also said this seat was too close to the communal refrigerator, microwave, and table for section events.  Thompson complained to Bendig, so she moved the microwave and arranged for the refrigerator to be moved too.  In the end, Thompson asked Bendig to leave the refrigerator where it was.  He also retrieved the microwave and put it back in its original location.  Eventually Thompson was moved to a permanent desk in the phone room.

(4)    In March 2013, Thompson's first-line supervisor, Maria Padilla, verbally counseled Thompson for combining his fifteen-minute break with his thirty-minute lunch break, a practice disallowed by the VA.  Thompson was upset because another supervisor had told him he could combine his breaks that day.  Thompson did not know about any other employees being allowed to combine their breaks in that way.

(5)    In August 2013, Thompson asked to use annual leave in lieu of sick leave because he did not have enough sick leave built up to cover a full day.  This request was denied because several other individuals were on leave.  Brooks designated Thompson as being on "leave without pay AWOL," which can sometimes lead to discipline but did not in this case.

(6)    In June 2015, Thompson discovered that Padilla had placed a "magnifying mirror" on her desk that was aimed at the back of his chair and head.  Thompson believed Padilla had done this to monitor him.  Padilla told VA investigators she installed the mirror to be able to see if someone was standing behind her, and in any case she was not able to see Thompson in the mirror.  Thompson complained about the mirror to Bendig and Norm Williams, a VA EEO supervisor, and requested a transfer out of the phone room.  Thompson's request was approved, but before he could move to another department he was required to make two separate "moves" within a two-week period.  A coworker, Jerome Darville, who requested a transfer the same time as Thompson had his request approved "without delay."

4

(7)     Thompson had other concerns with Padilla, including that she enlisted a coworker, Kristie Moquet, to spy on Thompson and monitor his workplace activities.  Thompson's evidence of this is that Moquet constantly sanitized her hands near his desk and that, on one occasion, she followed him into a bathroom.

(8)     Thompson started working in the Mental Health Department in September 2015.  Thompson didn't like this either, so he requested a transfer back to the phone room, where Bendig and Padilla no longer worked.  Thompson soon thereafter returned to work in the phone room, where he remained until his resignation in February 2017.

(9)     In December 2015, Thompson learned that a non-manager named Trellis Jackson had been allowed to work overtime.  Thompson had previously requested to work overtime but was told that overtime was reserved for managers and supervisors.

In February 2013, Thompson filed an EEO complaint alleging that the incidents that occurred in late 2012 and early 2013 were retaliation for his September 2012 complaint.  Thompson later added allegations of discrimination on the basis of national origin and age.  The VA Office of Resolution Management investigated the complaint and concluded that Thompson had failed to make out a case of disparate treatment, retaliation, or hostile work environment.  The VA issued a final dismissal of his complaint in February 2016 and granted him a right to sue in federal court.  Thompson filed another EEO complaint in July 2015 alleging retaliation for his September 2012 complaint.  The VA issued a final decision in July 2016 rejecting Thompson's claims of discrimination and granting him a right to sue in federal court.

5

Thompson filed suit in the U.S. District Court for the Southern District of Florida on May 24, 2016.  He alleged unlawful retaliation, disparate treatment, and hostile work environment in violation of Title VII.  The Secretary moved to dismiss for failure to exhaust administrative remedies, and in the alternative for summary judgment on the ground that Thompson could not succeed in his discrimination claims.  The district court granted the Secretary summary judgment.

## II.

"We review the grant of a motion for summary judgment de novo and resolve all reasonable factual doubts in favor of the non-movant."  Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010) (per curiam).  The Secretary, "as the party moving for summary judgment, had the burden of demonstrating that there were no genuine issues as to any material fact, and that it was entitled to judgment as a matter of law."  Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1266 (11th Cir. 2014).

## III.

A. RETALIATION

Title VII prohibits retaliation against an employee for opposing a discriminatory employment practice, "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "To establish a prima facie case

6

of retaliation, plaintiffs must prove that: (1) they engaged in statutorily protected conduct; (2) they suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193–94 (11th Cir. 2016).  "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Id. at 1194 (quotation marks omitted).  "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff."  Id. (quotation marks omitted).

To make out a claim of retaliation, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Id. at 1195 (quotation marks omitted).  The Supreme Court has told us that "petty slights or minor annoyances" are not enough to satisfy this requirement.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).  A work reassignment that "resulted in no decrease in pay or grade" does not constitute a material change in employment.  Trask, 822 F.3d at 1194.

Thompson has not shown that any of these actions rose to the level necessary to support a prima facie case of retaliation.  At the outset, Thompson has not shown any serious or material changes constituting adverse action.  Even his

assignment to the phone room—the closest thing he alleged to an actual alteration in the terms and conditions of his employment—was not sufficiently adverse. At most, Thompson seems to characterize this reassignment as a loss of prestige or responsibility, but with no allegation of decreased pay or grade. See id.

Beyond that, even if we assume his assignment to the phone room was a prima facie example of retaliation, Thompson has not rebutted the Secretary's argument that there was a legitimate, non-retaliatory reason for assigning him there. As the district court recognized, it was reasonable for the VA to have assigned Thompson to the phone room to give him a fresh start with new supervisors and coworkers. We are satisfied this reason was not mere pretext for invidious retaliation.

## B. RETALIATORY HOSTILE WORK ENVIRONMENT

This circuit recognizes a cause of action under Title VII for retaliatory hostile work environment. Gowski v. Peake, 682 F.3d 1299, 1311–12 (11th Cir. 2012) (per curiam). To prevail on a retaliatory hostile work environment claim, a plaintiff must show that: (1) he engaged in protected activity, (2) after doing so, he was subjected to unwelcome harassment, (3) his protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment. See id. at 1311. The fourth prong of this inquiry includes both "an objective and a subjective component," requiring

8

courts to consider the frequency and the severity of the conduct, whether it is threatening or humiliating, and whether it interferes with the employee's job performance. See id at 1312. The allegedly harassing acts must be considered "in context, not as isolated acts." See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

Like with Thompson's claim for retaliation, his claim for retaliatory hostile work environment fails because he has not shown he suffered sufficiently severe or pervasive harassment. As the district court rightly observed, the actions Thompson complains about "are the stuff of ordinary office life and the type of petty squabbling which is fairly typical between employees working in close quarters." Considered as a whole, these "petty and trivial actions" are insufficient to make out a claim of harassment. See Crawford v. Carroll, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (citing Burlington, 548 U.S. at 71, 126 S. Ct. at 2417).

C. DISPARATE TREATMENT

To make out a prima facie case of discrimination a plaintiff must show (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019). Even if the plaintiff does not produce a similarly situated comparator, he "will always survive summary judgment if he

9

presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. (alteration and quotation marks omitted). "[A] convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination . . . may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." Id. (alteration adopted and quotation marks omitted).

Thompson's claim of discrimination founders for a few reasons. First, as the Secretary notes in his brief, Thompson has not alleged he experienced discrimination because of his membership in a protected class. He has disclaimed reliance on age and national origin as the cause for the discrimination he alleges, even though these were the two non-retaliatory bases he asserted in his 2013 EEO complaint. Additionally, as discussed above, he has not shown that he was subjected to any adverse employment actions. But even if Thompson had made such a showing, he has not produced a similarly situated comparator who was treated better, nor has he presented a convincing mosaic of circumstantial evidence showing he experienced discrimination. Thompson points to two coworkers as comparators: Jerome Darville, who requested a transfer out of the phone room the

10

same time Thompson did; and Trellis Jackson, the non-manager who was allowed to work overtime. But as best we can tell, Thompson does not allege that either coworker was outside either of his protected classes. This dooms his ability to rely on either of them as a comparator. See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1326 (11th Cir. 2011). Nor can Thompson use the mosaic theory of discrimination, as the allegations in his complaint fall well short of "systematically better treatment of similarly situated employees." See Lewis, 934 F.3d at 1185.

D. DISCRIMINATORY HOSTILE WORK ENVIRONMENT

"To establish a hostile work environment claim under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Trask, 822 F.3d at 1195 (alteration adopted and quotation marks omitted). A plaintiff must "show the hostile treatment was based on [his] protected status." Id. at 1196.

Thompson has not pointed us to any comments or actions that were overtly "related to [his] protected characteristics," nor has he presented us with evidence that the "alleged hostility was in any way motivated by a discriminatory animus regarding" his age or national origin. See id. Without either of these, his claim of a discriminatory hostile work environment cannot succeed.

**AFFIRMED.**

11