[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10381

Non-Argument Calendar

_____

SOBNER FELIX,

Plaintiff-Appellant,

*versus*

KEY LARGO MANAGEMENT CORP.,
a.k.a. Ocean PR, Inc,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:19-cv-10067-JEM

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Like a bump to a spinning top, a major change in routine can send people careening. The bump here was a shift in the house-keeping schedule at Key Largo Management's hotel. What toppled was the employment relationship between tenured housekeeper Sobner Felix and the hotel. Now Felix sues, claiming that KLM failed to accommodate and wrongfully terminated him because of a disability. On appeal we must decide whether Felix's diabetic retinopathy qualified as a disability under the Americans with Disabilities Act when it impaired his vision to the point that night driving was no longer safe. It did. We accordingly reverse the grant of summary judgment to Key Largo Management.

## I.

Before the scheduling change, KLM had employed Sobner Felix as a housekeeper for well over a decade. During that tenure Felix had worked the 8 a.m. to 4 p.m. day shift, making beds, cleaning, and removing trash. In 2016, KLM shifted to flexible scheduling and began to ask Felix to work the other housekeeping shift from 2 p.m. to 10 p.m. on some days. This created a problem for Felix. He suffered from diabetic retinopathy, a condition that impaired his vision enough that it prevented him from driving at night. And because he drove to work in Key Largo, Florida, from

Homestead, Florida, working the later shift would require him to commute home from the hotel in the dark.

To remedy this problem, Felix informed his supervisor Elsie Rodriguez of his diabetic retinopathy and requested that she not schedule him for the later shift. He provided her with a doctor's note that explained his condition and that asked KLM to schedule him for day shifts so that he would not be pressed to drive home at night.

Although KLM responded to Felix's request and modified his schedule, it did not return him exclusively to day shifts like he wanted. Instead, KLM scheduled him to work reduced hours on "mid-shifts," such as from 12 p.m. to 7 p.m. KLM claims it also permitted him to leave early—"whenever he needed to make it home before dark." Felix felt that these changes were insufficient. He argued that the only viable shift was the day shift—on day shift he could work a full eight hours and still commute home before dark.

Felix and KLM dispute how his employment eventually ended. As KLM tells it, Felix quit: One day, months after his request, Felix clocked in for work at 8 a.m. despite knowing he was not scheduled until 12 p.m. Rodriguez confronted him, and he became "super angry" and started "screaming." Management asked him to leave to deescalate the situation and warned him that they would call the police if he refused. Then, although Rodriguez instructed him to return for his scheduled shift at 12 p.m., that day and the rest of the week he skipped work. KLM explains that his

employment ended at a follow-up meeting when he quit because KLM refused to schedule him exclusively between 8 a.m. and 4 p.m.

But as Felix tells it, KLM fired him.  Felix admits he clocked in before his scheduled start that day, but he claims that when Rodriguez saw him working she fired him and told him that he had to leave or she would call the police.  Felix also denies quitting at the follow-up meeting.

So Felix sued.  He argued that KLM violated the Americans with Disabilities Act (ADA) when it failed to accommodate him and discriminated against him because of his diabetic retinopathy.  KLM moved for summary judgment on both claims.  It argued that Felix's ADA claims failed because he did not provide evidence of any disability.  Felix responded that he had—pointing to two disabilities: diabetes and diabetic retinopathy.  Although his complaint referred only to diabetic retinopathy, and never to diabetes, Felix highlighted his deposition testimony and his physician Dr. Richardson-Armas's declaration to show that he was diagnosed with diabetes the same month he requested to stay on the day shift.

The district court found that Felix was not disabled as defined by the ADA and granted summary judgment for KLM.  The court concluded that neither diabetes nor diabetic retinopathy were disabilities because they did not substantially limit any major life activity.  As the court construed it, Felix only argued that his conditions prevented him from driving, which it concluded was

not a major life activity.  The court did not go on to address any of the remaining elements of either ADA claim.  Felix appealed.

## II.

This Court reviews a grant of summary judgment de novo. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020). We view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Id.* Summary judgment is not proper unless the "moving party is entitled to judgment as a matter of law." *Id.*

## III.

Felix must prove that he is disabled to bring either a failure to accommodate or discriminatory termination claim under the ADA.  We analyze these ADA claims under the same burden-shifting framework we apply to Title VII employment discrimination claims. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Id.*  Under this framework "an employer's failure to reasonably accommodate a disabled individual" constitutes "unlawful discrimination." *Id.* at 1262.  In this appeal we only address the one element at issue, whether Felix showed that he had a disability.

One definition of "disability" under the ADA is "a physical or mental impairment that substantially limits one or more major

life activities." 42 U.S.C. § 12102(1)(A). Congress revised and expanded the scope of "disability" in 2009 when it passed the ADA Amendments Act (ADAAA). Prior to the amendment the previous text of § 12102 had not elaborated on the meaning of "substantially limits" or "major life activities," and the Supreme Court had interpreted the statute to impose "a demanding standard for qualifying as disabled." *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) (concluding the ADA excluded disabilities that could be mitigated). The ADAAA changed the rule established in *Toyota Motor* and *Sutton*, stating that "disability" should be "construed in favor of broad coverage of individuals." § 12102(4)(A); s*ee Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014). It also added a non-exhaustive list of major life activities and expanded that category to include major bodily functions.[1] § 12102(2). Any pre-amendment ADA case thus applies a defunct standard for defining disability under § 12102, so a court must always assess whether the ADAAA undercuts the case's reasoning before relying on it. *Cf. Mazzeo*, 746 F.3d at 1268.

---

[1] Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2).

Felix argues that both his diabetic retinopathy and his diabetes qualify as disabilities.  We address each in turn below.

## A.

Felix's diabetic retinopathy qualifies as a disability because he showed that it substantially limited his sight.  To establish that a physical or mental impairment like diabetic retinopathy "substantially impairs" a "major life activity," a plaintiff must explain (1) the condition, (2) the pain or restriction it causes, and (3) how that pain or restriction limits a major life activity.  *See Mazzeo*, 746 F.3d at 1269.  He must also provide enough evidence of "severity, frequency, and duration" that a jury could assess the extent that the impairment limits the major life activity.  *Lewis v. City of Union City*, 934 F.3d 1169, 1180 (11th Cir. 2019).

In *Mazzeo*, the plaintiff established that he had a disability because he showed how and how much his condition limited a major life activity.  His treating physician explained that he suffered from a "degenerative disc disease and a herniated disc."  746 F.3d at 1268–69.  The physician described how these conditions restricted Mazzeo's "ability to walk, bend, sleep, and lift more than ten pounds" because they triggered "pain radiating from the lumbar spine down Mr. Mazzeo's right leg" that "increase[d] with prolonged sitting and standing."  *Id.*; *see also EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1344 (11th Cir. 2016) (finding a disability when spinal stenosis and a hip replacement caused pain that required the plaintiff to either use a cane or regularly stop and balance when walking).

In contrast, the plaintiff in *Lewis* failed to establish a disability because she never detailed the extent of her impairment. Lewis argued that it was enough to show that her paroxysmal nocturnal dyspnea caused periodic shortness of breath that affected her sleeping and breathing. *Lewis*, 934 F.3d at 1180. But we disagreed, because Lewis provided no "evidence of the severity, frequency, and duration of these episodes." *Id.*; *see also Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1273 (11th Cir. 2020) (finding no disability because of the lack of "timing, frequency, and duration" details).

Felix's evidence is much more like Mazzeo's. Felix's primary care physician, Dr. Richardson-Armas, explained that his retinopathy was "caused by damage to the blood vessels of the light-sensitive tissue at the back of the eye (retina)." She also clarified that despite his condition "Felix could perform the essential functions" of his work but that the retinopathy impaired his vision to the extent that he was "unable to drive at night." In his deposition Felix testified that he visited the doctor because he "was having trouble seeing at night." He confirmed that the doctor cautioned him not to drive because of his faulty night vision: "[S]ometimes I can [see]; sometimes I cannot." And unlike in *Lewis*, Felix detailed the extent of his impairment. His ability to see to work but not to drive at night serves as precise severity, frequency, and duration evidence of the limits on his sight.

With this evidence, a reasonable jury could have concluded that Felix's sight was substantially impaired. Felix explained (1) his diabetic retinopathy, (2) the damage to his retinas, and (3) the

extent that this limited his sight.  His diabetic retinopathy thus qualifies as a disability.

## B.

Felix also claims that his diabetes qualifies as a disability.  But he cannot base his ADA claims on diabetes at this stage because that condition did not appear in his complaint.  The complaint stated that KLM discriminated against him because of one "medical condition, diabetic retinopathy."[2]  Not until KLM motioned for summary judgment—arguing that diabetic retinopathy was not a disability—did Felix expand his argument to include diabetes.  Only then did he argue that he had two disabilities, "diabetes and retinopathy," and that diabetes qualified as a disability because it substantially limited his endocrine system, a major life activity.

Unfortunately for Felix, he needed to amend his complaint to add this tardy claim.  Plaintiffs cannot raise new claims in summary judgment filings.  *Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227–28 (11th Cir. 2013).  Under Federal Rule of Civil Procedure 15(a)(2), a party must request and be granted leave to amend its complaint to add a new claim.

---

[2] Nor did labeling retinopathy "diabetic" place diabetes into the complaint. Though the two conditions are associated, they are distinct.  Felix concedes as much—he treats "diabetes and retinopathy" as separate impairments.  And even if we can infer that Felix had diabetes because he had diabetic retinopathy, the complaint does not link the alleged discrimination to diabetes.  It only traces the discrimination back to retinopathy.

*Id.* Because Felix never amended his complaint to include his diabetes claim, the court should not have considered it. [3] Nor will we.

⋆        ⋆        ⋆

Viewing the facts in the light most favorable to Felix, his diabetic retinopathy qualifies as a disability. We therefore **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[3] It is puzzling that the district court's order assessed whether diabetes was a disability but overlooked important changes wrought by the ADAAA. Felix pointed out that endocrine function is a major life activity under the amended statute, but the court did not address it. *See* § 12102(2)(B); *see also* 29 C.F.R. § 1630.2(j)(3)(iii). The order also relied on pre-ADAAA cases without considering how the ADAAA had since relaxed the standard. *See, e.g., Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1155 (11th Cir. 2005) (concluding diabetes is not a disability because insulin injections reduce its limitations), *overruled by* 42 U.S.C. § 12102(4)(E) (courts must disregard insulin's mitigating effect). Courts must not revert to the old standard when the ADAAA applies.