[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13068
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-00054-SCB-JSS

BRADLEY JONES,
on behalf of himself and others similarly situated,

Plaintiff-Appellant,

versus

RS&H, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 31, 2019)

Before ROSENBAUM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this "collective action" under the Age Discrimination in Employment Act ("ADEA"), Bradley Jones, Paula Taylor, and Hamid Ashtari allege that their former employer, RS&H, Inc. ("RSH"), discriminated against them on the basis of age when it terminated them as part of a reduction in force ("RIF") in June 2015. They present three issues on appeal: (1) whether the district court abused its discretion by prohibiting the plaintiffs from proceeding on behalf of a nationwide class; (2) whether the court abused its discretion by refusing to compel nationwide discovery; and (3) whether the court correctly granted summary judgment to RSH on their claims of age discrimination. After careful review, we affirm the judgment of the district court.

## I.

RSH is a multi-discipline design firm that provides fully integrated architecture, engineering, and consulting services. The firm is organized into five divisions, which are Aerospace, Aviation, Corporate, Transportation, and Transportation Construction Management.

RSH maintains offices across the United States. All three plaintiffs worked at RSH's offices in Tampa in the Transportation division. This division had five subgroups: roadway, drainage, project development and environmental, traffic design, and structures. Jones was a designer in traffic design (since 1992); Taylor

was an administrative assistant in project development (since 2000); and Ashtari was an engineer in drainage (since 1993, except for a brief time away from 2000–01).

In June 2015, RSH conducted what it says was a RIF in its Transportation and Aerospace divisions.  A total of 23 employees nationwide were terminated in the RIF.  At the Tampa office, 7 employees, including Jones (age 53[1]), Taylor (52), and Ashtari (56), were terminated.  Mike Dixon (51) managed the Tampa Transportation division at the time of the RIF and was responsible for selecting the employees to be terminated in Transportation, with the consent of his supervisor, Regional Manager Rick Chesser (68).  The decision to conduct the RIF in Transportation was made by Practice Director Lisa Robert (45) and Operations Leader Jesse Forst (42), two members of the division's national leadership.

## II.

Claiming that the June 2015 RIF was a pretext to engage in intentional age discrimination, Jones filed a putative collective-action complaint against RSH under the ADEA and the Florida Civil Rights Act.  According to the complaint, 21 of the 23 employees terminated in the RIF, and 5 of the 7 employees terminated at the Tampa office, were over 40.  Jones also alleged that RSH rarely allowed non-officers to work until retirement, that it routinely fired older employees after they had trained

---

[1] All ages refer to the respective individual's age as of June 2015.

their younger replacements, and that members of RSH's management had made ageist comments.  Jones sought to represent himself and other former RSH employees in a collective action.

## A.

The ADEA permits employees to enforce its provisions by bringing "opt-in" collective actions as provided in 29 U.S.C. § 216(b).  *See* 29 U.S.C. § 626(b); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216–17 (11th Cir. 2001).  Under § 216(b), a collective action may be brought by one or more named employees on their own behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b); *Hipp*, 252 F.3d at 1217–18.  Employees interested in joining, or opting into, the lawsuit must file a written consent in order to become a party to the suit. *See* 29 U.S.C. § 216(b).

Taylor and Ashtari filed notices consenting to join the action immediately after the complaint was filed.  Jones then moved the district court to "conditionally" certify, and provide notice to, a class of "former RSH employees who were terminated from October 28, 2014, through August 24, 2015, and were 40 years of age or older at the time of termination."  *See, e.g.*, *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276–77 (11th Cir. 2018) (explaining "conditional certification").

RSH responded in opposition and submitted affidavits from its Vice President for Human Resources, Angelique Brown, and from Tampa Transportation manager

4

Dixon. Brown stated that RSH employed approximately 976 employees in at least 50 locations in 17 states, and that Jones's proposed class would encompass individuals from various RSH divisions, under different team leaders, and from office locations in 15 cities across the county. Dixon stated that he selected the employees to be terminated in Transportation at the Tampa office.

The district court granted in part and denied in part Jones's motion. For two independent reasons, the court found that Jones could not proceed on behalf of a nationwide class. First, the court found that Jones's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") did not give adequate notice that claims were being asserted by a nationwide class over a ten-month period. Second, the court, citing RSH's affidavits, concluded that the proposed class was too large and diverse to be similarly situated. The court explained that Jones had not alleged a sufficient factual basis to draw the inference that RSH had a pattern or practice of discriminating against its employees at all locations based on their age. For similar reasons, the court later rejected Jones's attempt to narrow the proposed class to employees who were terminated in the June 2015 RIF nationwide.

Nevertheless, the district court found that Jones could conditionally proceed on behalf of a class consisting of ADEA-protected employees who were terminated from the Tampa office during the June 2015 RIF. Notice was sent out to that class,

though no other plaintiffs joined the lawsuit.  Thus, the class consisted of Jones and the two opt-in plaintiffs, Taylor and Ashtari (collectively, "Plaintiffs").

**B.**

Despite losing on the class-certification issue, Plaintiffs during discovery requested information related to RSH's nationwide employment and termination of employees over 40 years old.  RSH refused, claiming that the requests were irrelevant, overbroad, vague, or unduly burdensome.  Plaintiffs then filed a motion to compel that discovery, maintaining that, even if the class was limited to the Tampa office, information about RSH's overall pattern and practice of discrimination— "terminating older employees and replacing them with younger, less qualified employees"—was relevant and potentially admissible to prove discriminatory intent and pretext as it related to the Tampa office.  Plaintiffs then filed a second motion to compel RSH's response to additional interrogatories and requests for production.

After a hearing, a magistrate judge entered an order granting in part and denying in part the first motion to compel and denying the second motion to compel. The magistrate judge granted the first motion to the extent the discovery requested was limited to RSH's Tampa location, but she denied Jones's demand for nationwide discovery.  As to the second motion, the magistrate judge found that the discovery requests at issue had not been served in compliance with Rule 5, Fed. R. Civ. P., because they had been sent to RSH by email without its consent.  The district court

6

overruled Jones's objections to the magistrate judge's order, concluding that the magistrate judge's rulings were not clearly erroneous or contrary to law.

## C.

RSH moved for summary judgment after discovery closed, submitting evidence and arguing that Plaintiffs could not establish *prima facie* cases of discrimination or rebut RSH's legitimate, nondiscriminatory reasons for (1) conducting the June 2015 RIF and (2) selecting Plaintiffs to be terminated in the RIF. Plaintiffs responded in opposition and presented evidence of their own.

The district court granted summary judgment in favor of RSH, concluding that, even if Plaintiffs had established *prima facie* cases, they had not presented sufficient evidence to show either that the RIF itself was pretextual or that the reasons offered for terminating Plaintiffs were not what actually motivated its conduct. Plaintiffs now appeal.

## III.

Plaintiffs first challenge the district court's class-certification decision. We review the district court's certification decision in a collective action for an abuse of discretion. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). As explained above, plaintiffs seeking to bring a collective action under the ADEA on behalf of a class of employees must show that the class is "similarly situated." 29 U.S.C. § 216(b). One way of doing so—though not the only way—is

to provide evidence that the class was subject to a "unified policy, plan, or scheme of discrimination." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996).

At the initial "conditional certification" stage, "[t]he plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Id.* at 1097. "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (quotation marks omitted).

Here, the district court reasonably limited the class to RSH's Tampa office. Plaintiffs claim that all employees who were terminated in the June 2015 RIF, wherever their location, were similarly situated because they were subject to the same general pattern and practice of discrimination. But we cannot characterize as "substantial" their allegations of a nationwide pattern and practice—statistics indicating the June 2015 RIF's disparate impact on employees over 40, ageist comments not directly related to that RIF, and vague anecdotal observations— particularly when viewed against RSH's affidavits stating that the RIF selections at the Tampa office were made locally by Dixon, who had no role in the selections at RSH's other offices. Plaintiffs offered no allegations or evidence to the contrary. Accordingly, the court did not abuse its discretion in concluding that Plaintiffs had not shown a "reasonable basis" for their claim of discrimination against a nationwide

8

class. *See Grayson*, 79 F.3d at 1097. We therefore need not and do not address whether Jones's EEOC charge was adequate to provide notice of a nationwide class.

## IV.

Plaintiffs next challenge the denial of their motions to compel discovery. We review a district court's denial of a motion to compel discovery for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006). We will not disturb the court's broad discretion to compel or deny discovery unless the court made a clear error of judgment or applied the wrong legal standard. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306–07 (11th Cir. 2011).

## A.

Plaintiffs first argue that the district court hampered their ability to present evidence of discrimination and pretext by denying their motion to compel broad discovery about RSH's employment and termination of ADEA-protected employees nationwide. Their theory of the case, Plaintiffs explain, was that RSH had engaged in a pattern and practice of age discrimination for years, using RIFs as an excuse to terminate older workers to make way for younger employees. For that reason, they assert, they were entitled to discovery about RSH's company-wide practices in order to develop statistical evidence in support of that theory.

Statistical information concerning an employer's general policy and practice may be relevant to prove discrimination or pretext, even in a case alleging an

9

individual instance of intentional discrimination. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir. 1983). Such statistical evidence may aid the plaintiff in showing that the employment action at issue "conformed to a general pattern of discrimination" against a protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 782, 805 (1973). *But see Krieg v. Paul Revere Life Ins. Co.*, 718 F.2d 998, 1002 (11th Cir. 1983) (concluding that statistical evidence was insufficient on its own to carry the plaintiff's burden because it did not "negate the reasons given by the company for [the plaintiff's] discharge").

But where "the employment decisions were made locally," even in the context of a nationwide RIF, "discovery on intent may be limited to the employing unit." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990). "[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit." *Id.* (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)). Only if it's "clear that nationwide practices are relevant" should discovery expand beyond the confines of "the local units of a corporation." *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 954 (11th Cir. 1991).

In *Earley*, we held that the district court properly denied a motion to compel nationwide discovery in the context of a RIF. *See* 907 F.2d at 1084–85. We noted that while the RIF was "initiated at the national level," "[t]he decision to terminate

10

[the plaintiffs] in the RIF—as opposed to other employees—was made at the local level." *Id.* at 1084. We found that the plaintiffs' asserted reasons for requesting nationwide discovery were "conclusory," and we explained that a "vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." *Id.* at 1084–85.

Here, the district court did not abuse its discretion by denying Jones's motion to compel company-wide discovery. As in *Earley*, while the June 2015 RIF was implemented at the national level, the decision to terminate Plaintiffs in the RIF, as opposed to other employees, was made at the local level. *See id.* at 1084. Thus, the "natural focus" of the case, particularly in light of the court's class-certification ruling, was the local level. *See id.* While Plaintiffs contend that they needed the discovery to develop statistical data to support their theory of company-wide discrimination, the court enjoys substantial discretion in discovery matters, and we cannot say that the court "made a clear error of judgment" in refusing to compel production of the information requested. *See Josendis*, 662 F.3d at 1306–07.

**B.**

Plaintiffs next argue that the district court abused its discretion by denying their second motion to compel on procedural grounds. In Plaintiffs' view, the court

11

should have required RSH to respond to the discovery requests, notwithstanding the technical deficiency in service, in light of RSH's prior conduct. Plaintiffs also complain that the court treated this deficiency much differently than RSH's own failure to comply with discovery procedures.

The second motion to compel concerned requests for production and interrogatories. The Federal Rules of Civil Procedure provide that these requests must be served, which may be accomplished "by electronic means if the person consented in writing." Fed. R. Civ. P. 5(a)(1)(C), (b)(2)(E); *see* Fed. R. Civ. P. 33–34. Importantly, consent "must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5 advisory committee's note to 2000 amendment.

Here, the district court did not abuse its discretion by enforcing compliance with the plain terms of Rule 5. Plaintiffs do not dispute that they never obtained RSH's written consent to receive electronic discovery requests. And RSH's consent "cannot be implied from conduct." *Id.* As to the alleged differential treatment, the infractions were fundamentally different because Plaintiffs violated a clear rule of civil procedure, while RSH did not.[2] We cannot say the court's different treatment of the different infractions was unreasonable. Accordingly, we affirm the denial of Plaintiffs' second motion to compel.

---

[2] RSH's alleged infraction was its failure to timely file a privilege log, which Plaintiffs argued amounted to waiver of the privilege. Declining to find waiver, the district court noted that no federal rule requires production of the log or mandates waiver as a sanction.

12

## V.

We now consider whether the district court properly granted summary judgment in favor of RSH.  We review the grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party.  *Batson v. Salvation Army*, 897 F.3d 1320, 1325 (11th Cir. 2018).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists if a reasonable jury could return a verdict for the non-moving party.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).  A "mere scintilla" of evidence in favor of a non-moving party is not enough.  *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012).  Summary judgment also may be granted where the evidence is "merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quotation marks omitted).

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee who is at least 40 years old on the basis of that employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).  A plaintiff may support her ADEA claim through either direct or circumstantial evidence.  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014).  Plaintiffs here allege intentional

13

discrimination, which requires proof by a preponderance of the evidence that age was the "but for" cause of their termination.[3] *Id.*

Where the plaintiff supports her claim with circumstantial evidence, we generally apply the *McDonnell Douglas* burden-shifting framework. *Id.* Under that framework, the plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the employer does so, the inference of discrimination drops out of the case, and the plaintiff then has the opportunity to show that the employer's proffered reasons were pretextual. *Id.* The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against her." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (Title VII case).

A plaintiff may satisfy her burden at the pretext stage "by showing that [the employer's] proffered reasons are not credible." *Id.* In most cases, "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511

---

[3] The ADEA also permits "disparate-impact claims," which involve facially neutral employment practices that fall more harshly on the protected group and do not require proof of intentional discrimination. *See, e.g.*, *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 236–40 (2005). Plaintiffs here do not challenge the district court's construction of their claims as alleging disparate treatment, rather than disparate impact.

(1993); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). However, judgment as a matter of law may still be appropriate if "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Reeves*, 530 U.S. at 148.

To show that an employer's reason is not credible, the plaintiff must meet that reason head on and rebut it. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). Plaintiffs may do so by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Holland v. Gee*, 677 F.3d 1047, 1055-56 (11th Cir. 2012) (quotation marks omitted). But plaintiffs may not recast the reason or merely quarrel with its wisdom. *Chapman*, 229 F.3d at 1030. It is not our role to second-guess the business decisions of employers. *Id.* The wisdom or fairness of the employer's decision is not at issue, only whether the employer gave an honest and non-discriminatory explanation for its behavior. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

A plaintiff may also defeat a summary-judgment motion "by offering evidence that [the employer] more likely than not acted with a discriminatory motive." *Alvarez*, 610 F.3d at 1265; *see Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of

15

circumstantial evidence that is probative of intentional discrimination . . . .").

Indeed, plaintiffs may defeat a summary-judgment motion outside of the *McDonnell*

*Douglas* framework by presenting "a convincing mosaic" of circumstantial evidence

that raises a reasonable inference that the employer discriminated against him.  *Smith*

*v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

## A.

We begin by summarizing RSH's evidence of its reasons for both (1) deciding

to conduct the RIF in Transportation and (2) selecting Plaintiffs Jones, Taylor, and

Ashtari, as opposed to other employees, to be terminated in the RIF.[4]

Practice Director Robert and Operations Leader Forst, members of

Transportation's national leadership, made the decision to conduct the RIF after the

end of RSH's fiscal year in March 2015.  Before then, they had been regularly

monitoring financial statements and workload projections in Transportation.  In or

around October 2014, they noticed a decrease in revenue and performance, which

corresponded with a decline in future workload.  In monitoring the situation going

---

[4] Contrary to Plaintiffs' conclusory claim that RSH failed to specify legitimate, non-discriminatory reasons for its actions, the record plainly shows that RSH met its "exceedingly light" burden of proffering legitimate, non-discriminatory reasons both for the RIF and for selecting each of the plaintiffs in the RIF.  *See Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (stating that the defendant's intermediate burden under *McDonnell Douglas* is "exceedingly light").  To the extent Plaintiffs argue that RSH did so belatedly and thereby harmed Plaintiffs' discovery efforts, that was a matter to bring to the district court's attention.

forward, they considered existing work RSH had, contracts that it had won but were not yet signed, and contracts that it was pursuing.  They projected the workload for the following six and twelve months and analyzed the projected workload by division, region, and office.  They also consulted with regional managers.

Based on their projected workload analysis, Robert and Forst determined that Transportation, and particularly the Tampa office, lacked sufficient work going forward for the number of employees.  According to Robert and Forst, RSH makes money by billing its employees' work hours to clients, and billable hours reflect an employee's "utilization."  Employee hours not billed to a specific project or client were instead billed to "overhead."  So, in RSH's view, a lack of utilization, or high overhead, reflects excess employees, which can be remedied either by increasing the amount of billable work or by reducing labor costs.  Because their projections showed a decline in future workload, Robert and Forst determined that Transportation needed to reduce labor costs.

To that end, Robert and Forst told Chesser that he needed to reduce labor costs by a certain amount in his region, which included Tampa, and that he had ten to twelve too many employees.  Robert and Forst did not tell Chesser which employees to select for termination in the RIF.  Chesser, in turn, tasked the Tampa Transportation manager, Dixon, with selecting the employees who would be

17

terminated in the RIF.  Chesser told Dixon to select people to reduce overhead and to increase the remaining employees' utilization.

Dixon made the selections for the RIF in Transportation at the Tampa office. In deciding which employees to terminate, Dixon considered several factors, including (a) utilization rate; (b) pay rate; (c) maintaining skills and capabilities; (d) performance; and (e) client interests.  The only real feedback he received during this process was about whether he was making "enough difference to the bottom line."  Once he made his selections, Dixon provided the list to Chesser, who consented and passed the list on to Robert and Forst for approval.

Dixon offered reasons for selecting each of the plaintiffs in the RIF.  Dixon said he selected Jones for termination because there would not be a loss of capabilities by terminating him—that is, the remaining employees in his group could do more things than Jones could.  Specifically, the other two employees on Jones's team were professional engineers who could sign and seal engineering documents and perform quality-control reviews.  Jones was not a professional engineer and could not do those things.  Additionally, according to Dixon, Jones had not done two of the four types of traffic-design work that RSH did.

With regard to Taylor, Dixon stated that he selected Taylor for termination because her teammate, Laura Self, had some capabilities that Taylor did not have, even though he viewed them as equally qualified.  Specifically, Dixon stated that

18

Self had more interaction with the company's clients, that she had more experience with several computer programs RSH used its in work, and that she was more familiar with the "submittal process."

As to Ashtari, Dixon cited two main reasons for his termination. First, Ashtari was the only employee in his subgroup that had clients who had stated that they did not want to work with him. Second, Dixon stated that Ashtari failed to follow standard operating procedures for quality control the year prior to the RIF. Ashtari was given a written reprimand for this incident in March of 2015.

**B.**

Plaintiffs maintain that RSH's reasons are not worthy of credence due to inconsistencies, contradictions, and implausibilities in its rationale, and that they presented enough additional evidence of pretext to preclude summary judgment. But even construing the evidence and drawing all reasonable inferences in favor of Plaintiffs, we conclude that the district court did not err in granting summary judgment in favor of RSH.

1.    Decision to Conduct the RIF

Plaintiffs first contend that a reasonable jury could conclude that RSH's explanation of its reason for conducting the RIF—to cut costs due to financial conditions and workload projections as of June 2015—is not worthy of credence. We disagree.

19

Plaintiffs contend that RSH's explanation is not worthy of credence because RSH's witnesses "contradicted each other on nearly every aspect of the RIF." The purported contradictions, however, are either illusory or not material.[5] Plaintiffs assert that the "lack of work" justification is somehow inconsistent with the stated goals of increasing employee utilization and reducing salary overhead. But it isn't. Undisputed evidence reflects that low utilization and high overheard reflected insufficient work for the number of employees. By reducing the number of employees, labor costs are reduced, and the work of terminated employees is taken up by remaining employees, thereby increasing employee utilization. In short, there is no conflict in these reasons.

Plaintiffs assert that RSH's own records contradict the proffered reasons for implementing the RIF. We agree with the district court, however, that Plaintiffs have not shown that the records are evidence of pretext. In and of itself, the mere fact that an employer was mistaken about the facts upon which the challenged employment decision was based does not establish pretext. *Wilson*, 376 F.3d at 1092. Rather, "a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly

---

[5] Plaintiffs identify a purported conflict regarding whether Dixon was told to terminate a *specific* number of employees, as opposed to an estimated number or a specific amount of salary overhead. We fail to see how this is material to RSH's reasons for conducting the RIF, and in any case, we see nothing inconsistent in Dixon's being told to reduce salary overhead by a specific amount and also being told an estimated number of employees that would reach that goal.

20

based his non-discriminatory decision." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002).  Plaintiffs have not done so.

While Plaintiffs may have shown that RSH's workload projections proved to be inaccurate[6] and were not entirely consistent, we see nothing in the record to indicate that Robert and Forst knew that their six- and twelve-month projections—which are necessarily guesses, albeit educated ones, about the future—were not credible at the time they made the decision to conduct the RIF.  In fact, Taylor indicated in her testimony that the Tampa Transportation division, during the 2014–15 time period, was making numerous bids on projects but winning few.  So while Robert and Forst may have been wrong in their projections, and could have been more responsive to changing conditions, these facts do not show that the projections were pretextual.

Plaintiffs also claim that RSH implemented the RIF in the face of record profits and a $24 million backlog of work.  But there is nothing to indicate—and Plaintiffs do not assert—that this evidence referred to Transportation specifically, as opposed to the company as a whole.  *See Beaver v. Rayonier, Inc.*, 200 F.3d 723,

---

[6] For instance, Plaintiffs presented evidence that the workload projections for May and June of 2015 in the Tampa traffic-design group were inaccurate, and that the Tampa office exceeded its sales goals for the 2015–16 fiscal year.  However, the number of hours worked in the traffic group in May and June does not directly contradict RSH's explanation that its projected amount of *billable* work was down across Transportation as a whole, nor does it contradict the projections for the remaining months.  For instance, Dixon testified that projects were ending around that time, but that not much new work was coming in.

21

728 (11th Cir. 1999) ("Beaver's evidence concerning profitability at Rayonier as a whole, as opposed to the profitability of the Jesup mill where the RIF was conducted, is irrelevant to the question of whether economic conditions at the Jesup mill led Rayonier to conduct a RIF."). Accordingly, this evidence does not undermine RSH's decision to conduct a RIF in Transportation specifically.

Finally, the fact that RSH hired additional employees at the Tampa office at some point before December 2017 says very little, if anything, about the state of matters in the Tampa office as of June 2015. Furthermore, as the district court noted, Plaintiffs "provide[d] no detail regarding what position each added employee held, when each employee was added, or the ages of the additional employees." *See Beaver*, 200 F.3d at 728–29 ("A plaintiff must also show that the new positions were similarly situated to those that were eliminated in the RIF.").

For these reasons, we conclude that no reasonable jury could disbelieve RSH's reasons for deciding to conduct a RIF in Transportation as a cost-cutting measure and instead conclude that it was a pretext to engage in age discrimination. And "[i]t is not our role to second-guess [RSH's] decision to respond to [a lack of utilization in Transportation] by cutting its workforce." *Id.* at 728.

### 2.    Reasons for Selecting Plaintiffs

Turning to RSH's reasons for selecting Plaintiffs, as opposed to other employees, to be terminated in the RIF, we likewise conclude that Plaintiffs have

22

not established pretext.  It is an unfortunate fact of RIFs "that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired."  *Earley*, 907 F.2d at 1084 (alteration and quotation marks omitted).  That means drawing fine distinctions between qualified employees, who, under better economic conditions, might all continue to be employed.

Here, RSH provided legitimate and uncontradicted reasons for selecting each of the plaintiffs in the RIF rather than other employees.  Unlike the other two members of his group, Jones was not a professional engineer, so he could not sign and seal certain engineering documents or perform quality-control reviews, and he worked almost exclusively with just two of the four areas of traffic-design work, even if he was capable of performing all four.  Taylor does not dispute that her teammate had more experience with certain software programs the team utilized or that her teammate was more familiar with the submittal process.  Her claim that Dixon should have selected a newly hired receptionist is unavailing because the receptionist was not part of Transportation under Dixon's management.  Finally, Ashtari admits that he was the only member of his team about whom customers had complained and had specifically requested that they not work with him in the future.  Accordingly, it simply is not the case, as Plaintiffs maintain, that the "[o]nly . . . fact that explains why Plaintiffs were terminated" is their age.  While Plaintiffs may disagree with the wisdom of these reasons and believe that they should have been

23

retained over other employees, they have not shown that the reasons are pretextual, and it is not our role to second-guess the business decisions of employers.[7]  *See Chapman*, 229 F.3d at 1030.

More broadly, Plaintiffs contend that Dixon provided inconsistent testimony regarding the criteria he used to make his selection decisions.  We disagree.  Dixon explained that his overarching considerations were the effect on the company's bottom line and its capabilities.  He then elaborated that he considered multiple factors, including utilization rates, pay rates, skills and capabilities, performance, and client interaction.  The fact that Dixon identified multiple factors during his deposition does not mean that he contradicted himself.

Still more broadly, Plaintiffs contend that their selection in the RIF, as the oldest members of their respective groups, is consistent with RSH's pattern and

---

[7] Plaintiffs maintain that Forst contradicted Dixon's explanation of his reasons for selecting Plaintiffs.  For instance, Forst stated that Dixon had mentioned that there may have been issues with Jones's interactions with the rest of the group, while Dixon did not offer that reason in his testimony.  But Forst also confirmed Dixon's testimony that Jones was selected because he was not an engineer like the other two members of the group.  Moreover, Forst's testimony that they *considered* utilization rates as a factor does not contradict other evidence indicating that Jones was not selected due to underutilization.  Overall, we find the minor variations and inconsistencies identified by Plaintiffs insufficient to create a genuine issue of material fact on pretext, given the unrebutted reasons already discussed. *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.").  Additionally, Dixon's failure to inform Plaintiffs, at the time of their termination, of these specific reasons is not evidence of pretext in this case.  The evidence indicates that Plaintiffs were informed that they were being terminated in a RIF, and it does not appear that Dixon was asked, and refused, to explain his specific reasons for selecting Plaintiffs.

practice of discrimination against older employees.  In this regard, they point to ageist comments, statistical evidence and analysis, and anecdotal observations. Though some of this evidence is troubling, we cannot conclude, on this record, that it is enough to create a genuine issue of material fact regarding whether Plaintiffs were selected for the RIF because of their age.  *See Mosley*, 694 F.3d at 1300 (summary judgment may be granted where the evidence is "merely colorable, or is not significantly probative of a disputed fact").

Undisputed evidence reflects that Dixon, with Chesser's consent, made the RIF selections for Transportation at the Tampa office.  Dixon was not involved in any prior RIF at RSH, so there is no evidence of a prior pattern of discrimination *by Dixon* against older employees from which to infer discriminatory animus in this case.  *See, e.g.*, *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("While not direct evidence of discriminatory animus, we believe that this pattern of firing and demoting *so many* older workers and replacing them with younger workers, *by the relevant decision-maker during the same time period*, constitutes probative circumstantial evidence of age discrimination." (emphasis added)).  For that reason, the statistical evidence of RSH's broader employment practices, even if suggestive of age discrimination, does not negate the reasons

25

offered by Dixon for selecting Plaintiffs in the RIF.[8]  *See Krieg*, 718 F.2d at 102 ("Even if the statistics did show that the company sometimes discriminates because of age. . . , they do not show that the company did so in this instance.").

In addition, Plaintiffs identify no evidence that RSH directly or indirectly caused or guided Dixon to select older employees in the RIF.  Because the evidence reflects that Dixon selected which Transportation employees to terminate at the Tampa office in the RIF, Chesser's isolated ageist comment—"you, the younger engineers of RSH, are our future"—made years before the RIF, does not raise an inference of discriminatory intent.  *See Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (isolated comments unrelated to the termination decision are "insufficient to establish a material fact on pretext").

As for the other comments cited by Plaintiffs, they were made by former supervisors who had no role in the June 2015 RIF.  And "comments by non-decisionmakers do not raise an inference of discrimination."  *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).  Finally, Plaintiffs' anecdotal evidence—that they had observed a pattern of older employees being fired and replaced by younger employees—was vague and conclusory and amounted to little more than Plaintiffs' subjective impressions, which are not enough to defeat a summary-judgment motion.

---

[8] For similar reasons, we cannot say that RSH's alleged failure to comply with the Older Workers Benefit Protection Act constitutes evidence of pretext in this case.

26

*See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").  Any remaining issues raised in Plaintiffs' briefing have been considered and found to be without merit.

For all of these reasons, we conclude that Plaintiffs did not present sufficiently probative evidence to create triable issues of age discrimination.  We therefore affirm the district court's grant of summary judgment.

## VI.

The judgment of the district court in favor of RSH is **AFFIRMED.**